UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

JUAN SONNY TREVINO, §
 §
 §
        Plaintiff, §
 §
versus §   CIVIL ACTION H-05-4023
 §
AQUARION OPERATING SERVICES, §
 §
        Defendant. §

## Opinion on Summary Judgment

1.   *Introduction.*

A worker sues his former employer for wrongful termination. The employer says it fired him because he was unproductive and not needed. The employer has moved for summary judgment, and it will prevail.

2.   *Background.*

On October 27, 2003, Aquarion Operating Services Company hired Juan Sonny Trevino. Aquarion had a contract with Montgomery Watson Harza Constructors to furnish workers to assist in its newly built water purification plant in Humble, Texas. Through Aquarion, Trevino worked at Montgomery as a maintenance technician. He was an at-will employee.

On March 7, 2004, Trevino's supervisor – Randy Lawson – told him to unlock the power to valves that lead to relief tanks. Trevino says that he refused. He says he believed that unlocking the tags would allow the use of equipment that would release hazardous waste. Trevino, however, admits that they must be unlocked to test the system. Lawson says he never asked Trevino to unlock anything.

Trevino originally said that management asked for his keys to the locks. He has since conceded that that claim was a lie.

In August 2004, Montgomery instructed Trevino to turn the valve to a hose to start the flow. The hose pumped fluids across two roads into a clarifier. Trevino says that he believed that the liquid was hazardous and would damage the environment where it flowed. Trevino, however, never refused to use the hose when instructed. According to Lawson, chemical tests show that any water that might leak into the environment is non-hazardous.

Trevino had a history of complaining about work at Aquarion. He also threatened to call a strike.

On March 7, 2005, Trevino telephoned and e-mailed his supervisors to complain about safety violations at the plant. He demanded that they stop plans for bringing the plant online and told them that he planned to report the violations to the Occupational Safety and Health Administration. Trevino never contacted OSHA. At his deposition, when his attorney asked him – a year later– whether he had "ruled out the possibility of calling OSHA," he said no. (Trevino Dep. 203:4-203:5, Feb. 6, 2006).

On the following work day, March 8, 2005, Trevino repaired and used the hose to pump fluids from containment and dock drains. He was doing that when Lawson called Trevino for a meeting.

Lawson fired Trevino at the meeting because he had received a letter from Montgomery instructing him to do it. Montgomery's contract allowed it to require Aquarion to fire employees at the plant. Lawson says that Trevino was fired because he was constantly unproductive and not needed by Aquarion once he was barred from Montgomery's plant.

Trevino says he was fired for complaining about safety violations. He now sues for wrongful termination.

3.   *Wrongful Termination.*

To prevail on his claim for wrongful termination, Trevino must show that: (a) he was an at-will employee; (b) he refused to perform; (c) an illegal act; and (d) his termination was solely because he refused to perform the illegal act. *Sabine Pilot Service, Inc., v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

The parties agree that Trevino was an at-will employee.

The court ordered Trevino to list the complaints about safety he made while working at the plant. He listed six. He later "remembered" another one. Of the seven complaints he made in the suit, he persists in only three.

Trevino fails to show that he refused to perform an illegal act. Trevino first claims that Aquarion asked him for his keys to lockout tags. In his deposition, Trevino changed his story and conceded that no one asked him for his keys.

Trevino then claims that he was asked to unlock the tags by his supervisor and that he refused. Unlocking the tags, however, is not illegal. Trevino admits that the tags must be unlocked legitimately to test the system. The possibility that someone else may do something illegal once the tags are unlocked does not transmute unlocking into an illegal act.

During his deposition, Trevino remembered another complaint he had against Aquarion. Trevino claims that his supervisor asked him to use a hose to pump hazardous fluids into the environment. Trevino, however, admits that he never refused to use the hose. Furthermore, Trevino has not shown why using the hose was illegal. Trevino's third claim fails.

Even if Trevino had refused to perform an illegal act, Aquarion fired Trevino for legitimate reasons. Once Montgomery barred Trevino from the plant, Aquarion had no need for him. Additionally, Aquarion has supported that Trevino was often unproductive.

4.  *Improvident Conduct.*

Trevino and his counsel acted irresponsibly throughout the judicial process. The court asked Trevino to list all of his grievances. He did. Still, it was not until his deposition that Trevino remembered that he considered using the hose to be illegal.

Trevino also changed his story about the tags. He claimed that he was asked for his keys to the lockout tags but refused. In his deposition, Trevino admitted that he lied. Despite this sworn admission, Trevino later used the false claim in his response to Aquarion's motion for summary judgment. *See* Fed. R. Civ. P. 11(b).

After four pretrial conferences, Trevino moved to remand. The motion was denied. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). It was without facts or law to support it and was an attempt to delay justice.

At Trevino's deposition, his counsel asked him lots of abstract and argumentative questions.

5. *Conclusion.*

Of the four elements, Trevino can only prove that he was an at-will employee. He will take nothing from Aquarion.

Signed June 20, 2006, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge